[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14475
_____

D.C. Docket No. 4:12-cv-00012-HLM

NIKKI BALLARD,
CINDY CLARK,

Plaintiffs-Appellants
Cross Appellees,

versus

CHATTOOGA COUNTY BOARD OF TAX
ASSESSORS, CHATTOOGA COUNTY,

Defendants-Appellees
Cross Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(July 7, 2015)

Before HULL, ANDERSON, and FARRIS,* Circuit Judges.

_____

\*      Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

PER CURIAM:

This appeal raises two primary issues that have been resolved by two en banc decisions of this Court. The first issue requires that we decide whether two local governmental entities within the state of Georgia should be treated as a single "employer" for purposes of Title VII and the Family and Medical Leave Act ("FMLA"). This issue is controlled by our decision in Lyes v. City of Riviera Beach, Florida, 166 F.3d 1332 (11th Cir. 1999) (en banc). The second issue requires that we decide whether the Board of Assessors of Chattooga County, Georgia ("Board") is entitled to Eleventh Amendment immunity from plaintiffs' § 1983 claims. This issue is controlled by our decision in Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc).

Because the issues in this case are clearly controlled by the above-mentioned en banc decisions of this Court, this opinion is written only for the benefit of the parties. We address each issue in turn.

## I. PLAINTIFFS' TITLE VII AND FMLA CLAIMS FAIL BECAUSE PLAINTIFFS' "EMPLOYER" EMPLOYS LESS THAN THE NUMBER OF EMPLOYEES REQUIRED FOR APPLICATION OF TITLE VII OR FMLA

Because the relevant facts were set forth comprehensively in the magistrate judge's Report and Recommendation (Docket 194) and in the district court's Order (Docket 198), we refer to the facts only as appropriate in our application of the law

2

to the relevant facts.  Both plaintiffs were employed by the Board, not by Chattooga County.  The Board employs fewer than fifteen employees, the required number for applicability of Title VII, and far fewer than the requisite number for applicability of FMLA.  Plaintiffs' argument that the Board employed at least fifteen employees fails because the members of the Board itself are not employees.  Rather, they are the employer.

Plaintiffs can satisfy the numerosity requirement only if they could succeed in their argument that the Board and the County constitute a single "employer" for purposes of Title VII and FMLA.[1]  However, plaintiffs' argument fails because plaintiffs cannot satisfy the test set forth in Lyes.

---

[1]    As a threshold matter, plaintiffs urge us to decline to entertain the merits of either the single employer numerosity issue or the Eleventh Amendment issue.  They argue that the district court abused its discretion in allowing the Board to amend its pleadings after the magistrate judge raised these issues.  After careful consideration of the briefs, the record, and full exploration at oral argument, we cannot conclude that there has been an abuse of discretion under the particular facts and circumstances here, where the issue raised by the parties is closely related to the issues raised by the magistrate judge; where the magistrate judge was led inevitably to the new, closely-related issues by the plaintiffs' own position with respect to the issue raised by the parties; and where additional discovery was allowed and the new issues were fully briefed by the parties.  The cases relied on by plaintiffs are distinguished from the instant case, not only by the foregoing facts, but also because the Board here is a public agency such that strong federalism and comity concerns counsel against ignoring the fact that the Georgia legislature has declared that such boards of tax assessors shall be separate entities and almost entirely independent of the respective county governments.  Moreover, with respect to the numerosity issue, we note that it is an element of plaintiffs' cause of action – not an affirmative defense – and that it was pled only implicitly in plaintiffs' complaint.  And, with respect to the Eleventh Amendment immunity issue, plaintiffs never argued in the district court that the Board's failure to assert it in its initial pleadings constituted a waiver.  Indeed, even on appeal, the waiver argument was neither raised in a straightforward manner nor briefed.

The Lyes opinion summarized the test as follows:

To summarize, we hold that in assessing whether multiple governmental entities are a single "employer" under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the breach of federal employment discrimination law. Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII.

The standard we adopt is not whether a fact finder reasonably could conclude the plaintiff has overcome the presumption. Instead, the standard is whether the fact finder reasonably could conclude the plaintiff has clearly overcome the presumption. The adverb "clearly," which derives from the federalism concerns we have discussed, is meant to be limiting. It is a thumb on the scale and sometimes it will be decisive because federalism concerns should sometimes be decisive.

166 F.3d at 1345. The Lyes opinion also set forth several factors that guide our

determination of whether one entity "exerts or shares control over the fundamental

aspects of the employment relationship of another entity to such a substantial

---

As will be apparent from our discussion below, Georgia's statutory scheme and case law reveals a clear intent that Georgia's boards of tax assessors are separate from, and independent of, the respective local county governments. The boards of assessors are subject to extensive controls from the state level, but little to no control by the local county government, all in service of the State's purpose to equalize statewide the valuation of real estate for ad valorem tax purposes. Strong federalism and comity concerns persuade us that we should not ignore this clear legislative intent of the State, as plaintiffs would have us do.

extent that it clearly outweighs the presumption that the entities are distinct." Id. The factors include: (1) interrelationship of operations and centralized control of labor operations; (2) the authority to hire, transfer, promote, discipline or discharge; (3) the authority to establish work schedules or direct work assignments; and (4) the obligation to pay or the duty to train the charging party. Id. The four listed factors are not intended to be all inclusive; rather, the analysis is based on the totality of the circumstances. Id.

Our analysis begins with the state law. As set forth both by the district court and the magistrate judge below, Georgia law clearly establishes the Board as a separate and independent entity. The obvious purpose of the state legislation was to equalize the assessment of property for ad valorem taxation statewide, and thus to subject the process to controls from the state level, independent of control by the local county-level government. Georgia's statutory scheme and its case law make clear that it is the Board – not the County – that has "control over the fundamental aspects of the employment relationships" with respect to these plaintiffs. See id. Chambers v. Fulford, 495 S.E.2d 6 (Ga. 1998), holds:

> O.C.G.A. § 48-5-260 establishes a comprehensive system for the administration and equalization of property taxes. The statute was enacted to
>
>> Create, provide, and require a comprehensive system of the equalization of taxes on real property within this state by the establishment of uniform state-wide forms, records, and

procedures, and by the establishment of a competent full-time staff for each county of this state to:

(A) Assist the board of tax assessors of each county …

Id. at (1).  O.C.G.A. § 48-5-290 creates a county board of assessors for each county in the State . . . .  O.C.G.A. § 48-5-262(c)(1) establishes the minimum  tax appraiser staffing requirement for each county . . . .  The rate of compensation payable to a staff appraiser is determined by the state revenue commissioner and payable from county funds.  O.C.G.A. § 48-5-263(c).

. . .

[I]n all matters dealing with county tax appraisers it is the board of tax assessors and not the board of commissioners which acts as the "governmental board [which] has the authority to act for the county." Spell v. Blalock, supra, at 462, 254 S.E.2d 842 ("[t]he authority to hire and fire appraisers . . . is not a power vested in the [county board of] commissioners.").  Because the power to hire and fire Powell as a tax appraiser rests with the Wheeler County Board of Tax Assessors, see id.; O.C.G.A. § 48-5-298(a), it follows that the authority to alter the duration of the employment contract remains with that body, not with the board of commissioners, which previously approved the contract.

495 S.E.2d at 8.

From the foregoing recitation of Georgia law, it is clear that Georgia has established the Board as a separate entity, independent of the local county government, thus triggering the Lyes presumption.  Pursuant to Lyes, that presumption can be rebutted only if "it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be

counted together under Title VII." 166 F.3d at 1345. Applying Lyes's four guiding factors to the facts of this case as established by Georgia law, it is clear that the presumption is not rebutted. Rather, application of the factors overwhelmingly indicates that it is the Board – not the County – which has "control over the fundamental aspects of the employment relationships." See id. Chambers makes it clear that it is the Board – not the County – which has control of labor operations [Lyes factor number 1]; the authority to hire, transfer, promote, discipline or discharge [factor number 2]; and the authority to establish work schedules or direct work assignments [factor number 3]. See 495 S.E.2d at 8. With respect to factor number 4 – the obligation to pay or the duty to train the charging authority – the rate of compensation for each appraiser, O.C.G.A. § 48-5-263(a)(1), and the training, id. § 48-5-268, are determined at the state level. While county funds comprise the major source of funding, at least the minimum level of funding is established, O.C.G.A. § 48-5-263(a)(1), and mandated, id. § 48-5-263(c), at the state level. Thus, the four factors listed by Lyes overwhelmingly establish that it is the Board – not the County – that controls the fundamental aspects of the employment relationships.

Looking at the totality of the circumstances, it is true that the County provides the building in which the tax appraisers work, maintains the building, provides payroll and human resources services, and other administrative services.

However, such administrative services are tangential to the "fundamental aspects of the employment relationships" and fall far short of creating a genuine issue of fact with respect to plaintiffs' heavy burden to "clearly overcome the presumption." See Lyes 166 F.3d at 1345.

For the foregoing reasons, plaintiffs' Title VII and FMLA claims fail for failure to satisfy the numerosity requirements of the respective statutes.[2]

## II.  PLAINTIFFS' SECTION 1983 CLAIMS FAIL BECAUSE THE BOARD OF ASSESSORS IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY

Plaintiffs' claims relate to alleged gender discrimination.  We cannot address the merits of those claims because we agree with the district court that the Board is entitled to Eleventh Amendment immunity.

As we stated in Manders:

> In Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an "arm of the state" in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.

338 F.3d at 1309.  In determining whether a defendant is an "arm of the state," Manders directs us to focus on the particular function in which the defendant was

---

[2]    Although Lyes addressed only the single employer issue in the context of Title VII, plaintiffs make no argument indicating that the corresponding FMLA analysis should be different.  Also, we summarily reject plaintiffs' other arguments in support of their Title VII and FMLA claims.  For example, their argument that the Board is a mere agent of the County is simply inconsistent with Georgia's statutory scheme.

engaged when taking the actions out of which liability is alleged to arise.  Id. at 1308.  The particular function at issue in this case involves the discipline and termination of plaintiffs who were either working as, or training for, appraiser positions.  We address the Manders factors in turn. [3]

A.  How Georgia law defines boards of assessors

As the above discussion indicates, Georgia law establishes the Board as a separate entity, independent of the local county government.  Indeed, the creation of the boards of assessors by the state legislature was part of a state-level effort to equalize taxes on real property throughout the state.  Georgia Code § 48-5-260, entitled "Purpose of Part" provides in relevant part:

It is the purpose and intent of this part to:

(1) Create, provide, and require a comprehensive system for the equalization of taxes on real property within this state by the establishment of uniform state-wide forms, records, and procedures

---

[3]    Plaintiffs' argument against Eleventh Amendment immunity in this case is that the Board is a division of the County and is acting for the County – not the State.  For the first time in plaintiffs' reply brief, they cite our recent decision in Lightfoot v. Henry County School District, 771 F.3d 764 (11th Cir. 2014) (holding that Georgia school districts are political subdivisions of the State like a municipality or county, thus holding that they are a division neither of the State nor the County, and accordingly are not an "arm of the state" entitled to Eleventh Amendment immunity).   However, even in their reply brief, plaintiffs do not argue in a straightforward manner that the Board is an independent entity that is neither part of the State nor the County.  As in Manders, we decline to address this very different issue which has not been briefed at all – i.e., whether the Board is a separate entity and neither part of the State nor the County.  338 F.3d at 1328 n.54.  We note, however, that Georgia's boards of assessors have nothing comparable to the autonomy of the school district in Lightfoot, which had the authority to levy taxes, issue bonds, etc., and which was treated in the Georgia statutes as a political subdivision comparable to a municipality or county.

and by the establishment of a competent, full-time staff for each county of this state to:

> (A) Assist the Board of Tax Assessors in each county in developing the proper information for setting tax assessments on property:
>
> (B) Maintain the tax assessment records for each county; and
>
> (C) Provide for state-wide duties and qualification standards for such staffs;
>
> (2) Provide for the examination of county tax digests in order to determine whether property valuation is uniform between the counties.

The Georgia statutory scheme obviously contemplates that its boards of assessors shall not only constitute a separate entity from the local county government, but the statutes reflect a clear intent that the boards of assessors shall be independent of the local county government. Georgia Code § 48-5-290 provides that, although members of the boards of assessors are appointed by the county governing authority, no close relative of a county commissioner is eligible to serve as a member of a board of assessors. Moreover, once appointed, the local county government cannot change the length of the term of existing members of boards of assessors. Id. § 48-5-295(a). And a member of a county board of assessors may be removed only for cause after a hearing before a judge of the superior court of the county. Id. § 48-5-295(b). Finally, and significantly in light of our mandate to assess this Eleventh Amendment issue in light of the particular

10

function giving rise to plaintiffs' claim, the independence of Georgia's boards of assessors is reflected in the Georgia cases holding that local county governments have no authority at all with respect to the discipline or termination of employees of the boards of assessors.  See Chambers, 495 S.E.2d at 8.

We conclude that the first Manders factor weighs overwhelmingly in favor of Eleventh Amendment immunity for the Board.  We turn now to the second factor.

### B. Georgia statutes and case law vest control over Georgia's boards of assessors in the State, not in the local county government

The second Manders factor looks at where the state law vests control.  With respect to the particular function at issue in this case, Georgia's case law expressly provides that the local county government shall have no control at all over the discipline or termination of employees of the boards of assessors.  See Chambers, 495 S.E.2d at 8.  Moreover, there is extensive state-level control over virtually every aspect of the work of Georgia's boards of assessors.  State law establishes the minimum number of appraisers (O.C.G.A. § 48-5-262); the qualifications, duties, and compensation thereof (Id. § 48-5-263); the training thereof (Id. § 48-5-268); and the procedures to be followed (Id. § 48-5-269).  Finally, and significantly, the end product of the work of Georgia's boards of assessors has to be approved or disapproved at the state level.  Id. § 48-5-304 (relating to the state-level approval of the tax digests).

The state-level control in this case is all encompassing; by contrast, there is no control at all vested in the local county governments. This is especially true with respect to the particular function giving rise to plaintiffs' claims; as noted, Chambers holds that local county governments have no authority at all with respect to the discipline or termination of the Board's employees. 495 S.E.2d at 8. This control factor of Manders points more overwhelmingly toward Eleventh Amendment immunity than did this factor in Manders itself. We next address the third Manders factor.

C.    Source of funds for the Board

The Georgia statutory scheme for funding its boards of tax assessors very closely parallels the funding scheme for sheriffs as described in Manders, 338 F.3d at 1323-24. Although the County "bears the major burden of funding[,]" the Board here, just as in Manders, is thus funded "because the State so mandates." Id. at 1323. State law determines the minimum number of appraisers for each county and sets their qualifications and duties. O.C.G.A. §§ 48-5-262, 48-5-263(a)-(b). The "rate of compensation for each appraiser grade" is determined by the state revenue commissioner pursuant to O.C.G.A. § 48-5-263(a)(1), and O.C.G.A. § 48-5-263(c) mandates that: "Staff appraisers shall be paid from county funds." And as in Manders, "both state and county funds are involved[,]" 338 F.3d at 1324,

12

because a portion of the salary of these appraisers is paid by the State.  O.C.G.A. § 48-5-267.

Thus, for the same reasons that prevailed in Manders, the "state involvement is sufficient to tilt the third factor of the Eleventh Amendment analysis toward immunity."  See 338 F.3d at 1324.  We turn next to the fourth Manders factor.

D.      Source of funds that will pay any adverse judgment

As with the third factor, the situation of Georgia's boards of assessors with respect to the issue of who will pay any adverse federal judgment is very similar to the situation that existed in Manders.  There, Georgia law placed the legal liability for paying the adverse judgment on neither the County nor the State, and "Sheriff Peterson thus apparently would have to pay any adverse federal court judgment … out of the budget of the Sheriff's Office … [which] would reduce his budget, and the practical reality is that Sheriff Peterson must recoup that money from somewhere … [and thus] both county and state funds are implicated."  Manders, 338 F.3d at 1327.  The Manders court also noted that

> [n]ever has the Supreme Court required an actual drain on the state treasury . . . because the Eleventh Amendment is rooted in a recognition that the States . . . maintain certain attributes of sovereignty, and a purpose of the Eleventh Amendment is to accord the States the respect owed them . . . and not to affront the dignity or integrity of a state by requiring a state to respond to lawsuits in federal courts.

Id. (internal quotations and citations omitted).

13

As in Manders, plaintiffs have pointed to no Georgia statute that makes a Georgia county liable for an adverse judgment against one of Georgia's boards of assessors, and we are aware of no such statute. The Georgia Supreme Court in Wayne County Board of Commissioners v. Warren, 223 S.E.2d 133 (Ga. 1976), held that "[a] county is not liable to suit for any cause of action unless made so by statute." Id. at 134 (quoting then O.C.G.A. § 23-1502, now codified at O.C.G.A. § 36-1-4) (internal quotation marks omitted). Neither are we aware of any statute making the State liable for an adverse judgment against one of Georgia's boards of assessors.

Thus, again as in Manders, the Board itself "apparently would have to pay any adverse federal court judgment," and the "practical reality" is precisely the same because "both county and state funds are implicated." See 338 F.3d at 1327. Just as in Manders, in this case too, "[t]he State's 'integrity' is not limited to who foots the bill, and, at a minimum, the liability-for-adverse-judgment factor does not defeat [the Board's] immunity claim." See id. at 1328.

In summary, our application of the Manders factors to the facts of this case is as follows. With respect to factors one, three, and four, the relevant facts, as dictated by the statutory scheme, are virtually indistinguishable from those in Manders. And with respect to Manders's second factor – what degree of control the State maintains over the entity – the facts of this case as dictated by the

14

statutory scheme point more overwhelmingly toward Eleventh Amendment immunity than in Manders itself.  For the foregoing reasons, we conclude that Manders controls and that the Board is entitled to Eleventh Amendment immunity from plaintiffs' § 1983 claims.[4]

## III.  CONCLUSION

Having rejected plaintiffs' arguments with respect to the two primary issues on appeal, we also reject any other challenges by plaintiffs to the judgment of the district court without need for further discussion.  We also reject as moot the Board's arguments on cross-appeal.  Accordingly, the judgment of the district court is

AFFIRMED.

---

[4]    Plaintiffs argue for the first time on appeal that their complaint also sought reinstatement, and this claim would survive Eleventh Amendment immunity.  We decline to entertain this argument, which was not fairly presented to the district court.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt." (internal quotation omitted)).